IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM BROWN, and<br>DOMONIQUE COLMENARES,<br>　　Plaintiffs,<br><br>v.<br><br>CITY OF BOSTON, MASSACHUSETTS,<br>Boston Police Officer Jonathan O'Brien,<br>Sergeant Detective Stephen Romano,<br>Trooper Ralph Dugue, Officer<br>Anthony Parham,<br>And John Doe 1-8, Defendants. | Cause No. 25-11035<br><br>JURY TRIAL DEMANDED |

## PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

Plaintiffs William Brown and Domonique Colmenares, by and through undersigned counsel, and, for their Complaint for Damages against the above-named Defendants for violations of their guaranteed and protected federal constitutional rights, state as follows:

## INTRODUCTION

1. Plaintiffs William Brown and Domonique Colmenares hereby bring this case against Defendants Officer Jonathan O'Brien, Sergeant Detective Stephen Romano, Trooper Ralph Dugue, Officer Anthony Parham, And John Does 1-8, in their individual capacity as empowered police officers of the City of Boston, Massachusetts, for the unlawful seizure by killing and destruction of Kobe, Mr. Brown and Ms. Colmenares' beloved dog and companion animal, in violation of Mr. Brown and Ms. Colmenares' protected Fourth Amendment rights, pursuant to and as authorized under 42 U.S.C. § 1983, and against Defendant City of Boston, Massachusetts, a municipal corporation and body politic, for its failures to properly and adequately train and supervise Defendants Officer Jonathan O'Brien, Sergeant Detective Stephen Romano, Trooper

1

Ralph Dugue, Officer Anthony Parham, And John Does 1-8, as empowered police officers and agents in its employ, pursuant to and under theories of municipal liability ("Monell" liability).

2. As pleaded and set forth in detail below, on April 19, 2023, Boston Police Officer Jonathan O'Brien, Sergeant Detective Stephen Romano, Trooper Ralph Dugue, Officer Anthony Parham, And John Does 1-8, were on patrol traveling down Erie Street in the neighborhood of Dorchester, Massachusetts.

3. During this time, Defendants claim to have sufficient probable cause to search the home of Mr. Brown's mother, Casey Stapleberg, based on the observation of Mr. Brown's brother walking into the building with what Defendants claim was a gait that led them to believe he was in possession of an illegal firearm.

4. Defendants had previous knowledge of Mr. Brown's residence and the possession of a dog, Kobe. During the course of entering the home without inquiring if there was a dog on the premises and without sufficient cause, Defendants encountered the dog, Kobe, by actively opening a closed bathroom door after hearing the sounds of animals in a room where the door was shut.

5. The dogs, by their nature, ran out of the room, in a species appropriate and reasonably expected manner.  Nevertheless, Defendants shot Kobe at point blank range, killing him.

6. Defendants' warrantless seizure of Kobe was unnecessary, callous, and as egregious as it was unwarranted by law and violative of Plaintiffs Brown and Colmenares' most fundamental and guaranteed constitutional rights.

7. At no time prior to the encounter between Kobe and Defendants did Kobe show any unusual or unanticipated aggression. Ultimately, Defendants had no legal excuse or justification for their actions and the killing of Kobe was the direct result of ineptitude in improperly

discharging a firearm, in not using less lethal means and in having the proper training to handle such situations.

8. As further pleaded and set forth in detail below, Defendant City of Boston, Massachusetts bears municipal liability for its part and actions in Defendants unlawful seizure and killing of Kobe.

9. Defendant City of Boston's training and supervision of Defendants was so woefully inadequate that capable law enforcement officers entrusted with firearms and public safety could not reasonably discern when reasonable force against Kobe was necessary.

10. Moreover, based on information and belief, it appears that the Defendant City of Boston engaged in ineffective or almost no training, supervision, or discipline of its officers

11. Based on information and belief, while the city may allege to have had ordinances and procedures for the safe dealing with encountered animals, it neither trained their officers on these ordinances and procedures nor put in place any mechanism for implementing them.

12. Ultimately, Kobe's death and Defendants egregious violation of Plaintiffs Brown and Colmenares' protected Fourth Amendment rights were the direct result of Defendant City of Boston's failures to properly train, supervise, and discipline its officers and failures to maintain a proper mechanism for the completing of the most basic and common of municipal tasks of using reasonable and necessary force against Plaintiffs' property.

## JURISDICTION AND VENUE

13. Jurisdiction is proper to this Court pursuant to 28 U.S.C. §§1331 and 1343. Plaintiff invokes the supplemental jurisdiction of the Court to hear and decide Plaintiff's claims under state law, pursuant to 28 U.S.C. § 1367(a).

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as Defendants are located, and the events giving rise to Plaintiff's claims occurred, within the boundaries of this judicial district.

## PARTIES

15. Plaintiff William Brown (hereinafter "Mr. Brown") is a citizen of the United States of America and resident of the Commonwealth of Massachusetts, residing within the boundaries of Suffolk County, Massachusetts.

16. Plaintiff Domonique Colmenares (hereinafter "Ms. Colmenares") is a citizen of the United States of America and resident of the Commonwealth of Massachusetts.

17. Defendants Officer Jonathan O'Brien, Sergeant Detective Stephen Romano, Trooper Ralph Dugue, Officer Anthony Parham, And John Does 1-8 are citizens of the United States of America and residents of the Commonwealth of Massachusetts, who served as a Boston police officers at the time of the events of this case.

18. Defendant City of Boston, Massachusetts (herein "Defendant City of Boston"), is a municipal corporation and body politic, organized and existing pursuant to the Massachusetts Constitution and state law. At all times relevant to this cause of action, Defendant City of Boston was a governmental entity and/or municipality subject to claims for municipal liability, as recognized in Monell v. New York Dept. of Social Services, 436 U.S. 658 (1978) and City of Canton, Ohio v. Harris, 489 U.S. 378 (1989).

## FACTUAL ALLEGATIONS

19. At all times relevant hereto, Mr. Brown resided in a multi-family residential building located in Suffolk County, Massachusetts.

20. At all times relevant hereto, Ms. Colmenares resided in a multi-family residential building located in Suffolk County, Massachusetts.

21. In September of 2023, Boston Police Department officers went on a call to the Brown residence and were made aware of the presence of the Dog residing there.

22. On April 19, 2023, Boston Police Officers Jon O'Brien, Luis Capriles, and Anthony Parham, along with Massachusetts State Trooper Ralph Dugue, were on patrol traveling down Erie Street in the neighborhood of Dorchester, Massachusetts.

23. At the time, Officers O'Brien, Capriles, and Parham, as well as Trooper Dugue, were assigned to the Boston Police Youth Violence Strike Force (hereinafter "Officers").

24. At or around the time of this patrol, Mr. Brown had taken his dog, Kobe, for a walk.

25. Officers allege that while on patrol, they observed Mr. Tumerick Brown, the brother of Mr. Brown, standing next to a parked vehicle.

26. Officers claim to have had prior knowledge that Mr. Tumerick Brown was wanted on eleven outstanding default warrants from multiple courts in the Commonwealth, as well as an extradition warrant from New Hampshire.

27. Officers allege that they were previously made aware that Mr. Tumerick Brown is not licensed within the Commonwealth of Massachusetts to carry a firearm.

28. Officers allege that they observed Mr. Tumerick Brown drop a black backpack into the parked vehicle and walk from the vehicle to the main entrance of 28 Michigan Avenue.

29. Officers allege that they were able to observe Mr. Tumerick Brown clutching his waist while walking to 28 Michigan Avenue, a manner of stride they claim is evidentiary of possession of an illegal firearm.

30. During this time, Mr. Brown and his mother, Casey Brown (hereinafter "Ms. Brown), were inside their residence at 28 Michigan Avenue, #3, preparing to leave for their places of employment to start their evening shifts.

31. After they left the unit and began to descend the interior stairwell toward the main entrance of the building, Mr. Brown and Ms. Brown were confronted by the Officers.

32. A weapon or weapons were drawn, and Mr. Brown as well as Ms. Brown were forcefully held against the wall as Officers frisked him, and Mr. Brown was released when Officers found there to be no imminent threat to their safety.

33. After this encounter, and without the consent of either Mr. Brown or Ms. Brown, Officers entered the residence, alleging they had a warrant for the arrest of Mr. Tumerick Brown, who resided at 28 Michigan Avenue, #3.

34. Shortly after entering the residence, Officers located Mr. Tumerick Brown and placed him under arrest, thereby satisfying the arrest warrant.

35. Officers did not possess nor did they make claim to possess a search warrant for the premises.

36. Without a search warrant, Officers opened a closed door located within the residence, which lead to a bathroom containing Mr. Brown and Ms. Colmenares' dog, Kobe.

37. Upon seeing the Dogs, Officer Romano yelled out "Dogs! Dogs! Dogs!" and fled the area and into the kitchen of the residence.

38. The Dogs, upon being released from the bathroom, exited in a non-threatening, non-aggressive manner.

39. Seeing Officer Romero unnecessarily and frantically running to the kitchen, and ignoring the non-aggressive behavior of the Dogs, Officers following in pursuit, and in the course of that pursuit unholstered their Glock .40 caliber firearm and fired numerous shots directly into the Dogs, killing Kobe instantly and injuring Tampa as well, who was taken to Angell Memorial Hospital.

40. Both Mr. Brown and Ms. Colmenares were subject to witness the entirety of the events as they occurred.

41. At no time did any of the City of Boston Police officers inquire as to whether or not there were dogs on the property.

42. Some of these same officers had previously been to this location and were aware that there was a dog at the residence.

43. This was a training failure by the Defendant City of Boston

## CAUSES OF ACTION

### COUNT I

***MUNICIPAL ("MONELL") LIABILITY AGAINST DEFENDANT CITY OF BOSTON FOR UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES COGNIZABLE UNDER 42 U.S.C. § 1983 FOR THE KILLING OF KOBE***

**(Plaintiff, Mr. Brown)**

44. Plaintiff, Mr. Brown, re-alleges and incorporates by reference the previous paragraphs as if set forth fully herein.

45. As described herein, Boston Police Officers, as representatives of the City of Boston, while acting under color of state law and acting alone and in concert with others, deprived Mr. Brown of his rights privileges and immunities as secured by the Constitution of the United States of America, by and including but not limited to:

    (a) unlawfully and unreasonably executing an arrest warrant on Mr. Brown's home which resulted in the shooting and killing of Kobe, Mr. Brown's family pet;

    (b) requesting, obtaining, and/or directing the deployment of the Boston Police Youth Violence Strike Force to execute the administrative search warrant with full awareness of the tactics that would be employed by that Unit, including making violent and no-knock entry, would likely result in the injury and/or death to the pet(s) that he knew and/or should have known were in the home; and

    (c) failing to properly develop any non-lethal plan for confronting any animals that they knew and/or should have known to likely be present in the Brown residence.

46. As a direct and proximate result of the conduct of Defendant City of Boston, Mr. Brown has suffered injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; loss of Kobe and his companionship; great fear for his safety and that of his family; pain of the mind as well as the body; fear, apprehension, depression, anxiety, loss of enjoyment of life, loss of faith in his society, and consternation.

47. The acts of Defendant City of Boston described herein were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of and/or callously indifferent to the rights of Mr. Brown, thus entitling him to an award of punitive damages against the Defendants.

48. As a result of Defendant City of Boston's unlawful actions and infringements of his protected rights, Mr. Brown has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Mr. Brown respectfully prays that this Court enter judgment in his favor under 42 U.S.C. §§ 1983 and 1988 against Defendant City of Boston and award him any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which he is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## COUNT II

*MUNICIPAL ("MONELL") LIABILITY AGAINST DEFENDANT CITY OF BOSTON FOR UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES COGNIZABLE UNDER 42 U.S.C. § 1983 FOR THE KILLING OF KOBE*
**(Plaintiff, Ms. Colmenares)**

49. Plaintiff, Ms. Colmenares re-alleges and incorporates by reference the previous paragraphs as if set forth fully herein.

50. As described herein, Boston Police Officers, as representatives of the City of Boston, while acting under color of state law and acting alone and in concert with others,

deprived Ms. Colmenares of her rights privileges and immunities as secured by the Constitution of the United States of America, by and including but not limited to:

    (d)    unlawfully and unreasonably executing an arrest warrant on Mr. Brown's home which resulted in the shooting and killing of Kobe, Ms. Colmenares' family pet;

    (e)    requesting, obtaining, and/or directing the deployment of the Boston Police Youth Violence Strike Force to execute the administrative search warrant with full awareness of the tactics that would be employed by that Unit, including making violent and no-knock entry, would likely result in the injury and/or death to the pet(s) that they knew and/or should have known were in the home; and

    (f)    failing to properly develop any non-lethal plan for confronting any animals that they knew and/or should have known to likely be present in the Brown residence.

51. As a direct and proximate result of the conduct of Defendant City of Boston, Ms. Colmenares has suffered injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; loss of Kobe and his companionship; great fear for her safety and that of his family; pain of the mind as well as the body; fear, apprehension, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

52. The acts of Defendant City of Boston described herein were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of

and/or callously indifferent to the rights of Ms. Colmenares, thus entitling her to an award of punitive damages against the Defendants.

53. As a result of Defendant City of Boston's unlawful actions and infringements of his protected rights, Ms. Colmenares has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Ms. Colmenares respectfully prays that this Court enter judgment in her favor under 42 U.S.C. §§ 1983 and 1988 against Defendant City of Boston and award her any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

### COUNT III

**UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT, COGNIZABLE PURSUANT TO 42 U.S.C. § 1983 FOR THE KILLING OF KOBE AGAINST DEFENDANTS  Police Officer Jonathan O'Brien, Sergeant Detective Stephen Romano, Trooper Ralph Dugue, Officer Anthony Parham, And John Does 1-8**

**For Both Plaintiffs Mr. Brown and Ms. Colmenares**

54. Plaintiffs Brown and Colmenares re-allege and incorporate by reference the previous paragraphs as if set forth fully herein.

55. As secured and guaranteed by the Fourth Amendment to the Constitution of the United States of America, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . .."

11

56. As defined by the United States Supreme Court, a Fourth Amendment seizure of property occurs whenever the is "some meaningful interference with an individual's possessory interests in that property." See <u>Soldal v. Cook Cnty, Ill</u>., 506 U.S. 56, 61-62 (1992)(citing <u>United States v. Jacobsen</u>, 466 U.S. 109, 113 (1984)).

57. As repeatedly recognized and well-established by the federal courts, the seizure of a family pet and dog by killing him/her can give to a claim for an unlawful seizure in violation of the Fourth Amendment. See <u>Andrews v. City of West Branch</u>, Iowa, 454 F.3d 914, 918 (8th Cir. 2006); <u>San Jose Charter of the Hell's Angels v. City of San Jose, California</u>, 402 F.3d 962, 975 (9th Cir. 2005) ("We have recognized that dogs are more than just a personal effect. The emotional attachment to a family's dog is not comparable to a possessory interest in furniture.")(holding that "the killing of a person's dog constitutes an unconstitutional destruction of property absent a sufficiently compelling public interest").

58. As well-established by the federal courts, warrantless searches and seizures are considered, warrantless searches and searches are per se unreasonable unless they fall within a one of the few and "well-defined" exception to the warrant requirements. <u>United States v. Place</u>, 462 U.S. 696, 700-702 (1983); See also <u>Katz v. United States</u>, 389 U.S. 347, 357 (1967); <u>Robbins v. City of Des Moines</u>, 984 F.3d 673, 680 (8th Cir. 2021).

59. On or about April 19, 2023 , Plaintiffs Brown and Colmenares were the lawful owners of Kobe, their pet and companion animal.

60. On or about April 19, 2023, Defendants  Officer Jonathan O'Brien, Sergeant Detective Stephen Romano, Trooper Ralph Dugue, Officer Anthony Parham, And John Does 1-8,

while acting under color of state law, meaningfully interfered with the Plaintiffs' protected possessory interests in Kobe by shooting and killing the dog after failing to inquire if there was a dog on the premises, thereby bringing the danger upon themselves.

61. Defendants Officer Jonathan O'Brien, Sergeant Detective Stephen Romano, Trooper Ralph Dugue, Officer Anthony Parham, And John Does 1-8 killing of Kobe was effectuated in the absence of a lawfully issued warrant and/or without judicial authorization, thereby rendering their actions presumptively per se unreasonable.

62. Defendants Officer Jonathan O'Brien, Sergeant Detective Stephen Romano, Trooper Ralph Dugue, Officer Anthony Parham, And John Does 1-8, based on the facts and circumstances of this matter, are not entitled to any claim of qualified immunity as it is clearly well established that "an officer commits an unreasonable, warrantless seizure of property, in violation of the Constitution when he shoots and kills an individual's family pet when that pet presented no danger and when non-lethal methods of capture would have been successful." Andrews v. City of West Branch, Iowa, 454 F.3d 914, 918 (8th Cir. 2006)(citing Brown v. Muhlenberg Twp., 269 F.3d 205, 210-11 (3rd Cir. 2001); Fuller v. Vines, 36 F.3d 65, 68 (9th Cir. 1994)).

63. As a direct and proximate result of the Defendants' conduct and action, Plaintiffs have suffered and continue to suffer injuries and damages, including but limited to: infringements and deprivations of his constitutional rights; great fear for their liberty and security; pain of the mind as well as the body; mental anguish and distress anxiety; injury to their faith in his society; and consternation.

64. The acts of Defendants Officer Jonathan O'Brien, Sergeant Detective Stephen Romano, Trooper Ralph Dugue, Officer Anthony Parham, And John Does 1-8, as described

herein, were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of the Plaintiffs, thus entitling them to an award of punitive damages.

65. As a result of Defendants Officer Jonathan O'Brien, Sergeant Detective Stephen Romano, Trooper Ralph Dugue, Officer Anthony Parham, And John Does 1-8 unlawful actions and infringements of their protected rights, Plaintiffs Brown and Colmenares have been compelled to retain counsel in this matter and are therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff William Brown and Plaintiff Domonique Colmenares respectfully pray that this Court enter judgment in their favor, under 42 U.S.C. §§ 1983 and 1988, against Defendants Officer Jonathan O'Brien, Sergeant Detective Stephen Romano, Trooper Ralph Dugue, Officer Anthony Parham, And John Does 1-8 in their individual capacity, and award Plaintiffs any and all compensatory damages, pre-judgment interest, post judgement interest, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which they entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

Respectfully Submitted,
For the Plaintiffs Brown and Colmenares, by

_____
Jeremy Cohen, Esq.  BBO # 631703
Boston Dog Lawyers, PC
450B Paradise Rd. # 289
Swampscott, MA 01907
JCohen@Bostondoglawyers.com